IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STELLA GOODWIN,                    )    CIVIL NO. 09-00469 LEK-BMK
                                   )
            Plaintiff,             )
                                   )
      vs.                          )
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )
_____)

**AMENDED ORDER REVERSING THE COMMISSIONER OF SOCIAL SECURITY'S
DECISION TO DENY PLAINTIFF SOCIAL SECURITY DISABILITY
INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME**

Before the Court is pro se Plaintiff Stella Jane
Goodwin's ("Plaintiff") appeal of Defendant Commissioner of
Social Security Administration's ("the Commissioner")
July 30, 2009 decision denying Plaintiff social security
disability insurance benefits and supplemental security income
("the Decision"). Plaintiff filed her opening brief on
January 27, 2011, and the Commissioner filed his answering brief
on February 2, 2011. On April 8, 2011, this Court issued an
entering order finding this matter suitable for disposition
without a hearing pursuant to Rule LR7.2(d) of the Local Rules of
Practice of the United States District Court for the District of
Hawai`i ("Local Rules"). [Dkt. no. 29.] After careful
consideration of the parties' briefs and the relevant legal
authority, and for the reasons set forth below, the
Commissioner's Decision is HEREBY REVERSED, and the Court HEREBY

FINDS that, on remand, the ALJ must find that Plaintiff was disabled, for purposes of the Social Security Act, as of the date of the ALJ Decision. The Court REMANDS the instant case to the Social Security Administration for further proceedings on the following: 1) determination of Plaintiff's onset date of disability; and 2) determination of Plaintiff's eligibility for benefits based on her onset date of disability; and 3) if Plaintiff is eligible for benefits based on her onset date, calculation of benefits.

## BACKGROUND

Plaintiff filed her Complaint on October 5, 2009, seeking judicial review of the Commissioner's Decision, which found that Plaintiff was not entitled to either social security disability insurance benefits or supplemental security income ("SSI"). Plaintiff initially filed an application for disability benefits and a protective application for SSI on March 2, 2005. Both applications alleged a disability onset date of June 30, 2002. The Social Security Administration ("SSA") denied the applications initially on August 15, 2005, and on reconsideration on April 3, 2006. Plaintiff filed a timely written request for a hearing on May 30, 2006. The hearing occurred on March 22, 2007, in Kailua-Kona, before Administrative Law Judge Henry M. Tai ("the ALJ"). Plaintiff was represented by Gayle Dunn, a non-attorney, and Gwen L. Keliihoomalu testified as

an impartial vocational expert.  [Administrative Record ("AR") at 15-16.]

The ALJ issued his decision ("the ALJ Decision") on May 25, 2007.  In considering whether Plaintiff was disabled, the ALJ applied the five-step analysis described in 20 C.F.R. §§ 404.1520 and 416.920(a).  [AR at 17-18.]  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  [AR at 19 (citations omitted).]  Second, the ALJ noted that Plaintiff had a "severe combination of impairments: a depressive disorder, an anxiety disorder and a history of substance abuse in remission."  [Id. (citations omitted).]  Third, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment, which would preclude all work.  [Id. (citations omitted).]  The ALJ also found that Plaintiff was not entirely credible regarding the intensity, persistence, and effects of her symptoms.  [AR at 23.]  Fourth, the ALJ found that Plaintiff was limited to "simple repetitive tasks" and that she had "essentially no other significant limitations."  [AR at 24-25.]  The ALJ found that Plaintiff's limitation to simple repetitive tasks prevented her from doing her past relevant work as an office manager, a human resource specialist, a bookkeeper, or a sales clerk.  [Id.]  Fifth, the ALJ noted that, at her alleged disability onset date, Plaintiff: was closely approaching advanced age; had a high school

education; was able to communicate in English.  In light of the fact that Plaintiff had only non-exertional limitations which had little or no effect on unskilled work, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as flower picker, nut sorter, assembler of small products, or produce washer.  [AR at 25-26.]  The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Social Security Act at any time through the date of the ALJ Decision.  [AR at 26 (citations omitted).]

Plaintiff requested review of the ALJ Decision.  On July 30, 2009, the Appeals Council declined review, rendering the ALJ Decision the Commissioner's final Decision.[1]  [AR at 9-11.] Plaintiff requested an extension of time to file an appeal of the Commissioner's Decision.[2]  [AR at 8.]  On October 9, 2009, the Appeals Council granted Plaintiff's request, giving her thirty days from the date she received the council's letter to file a civil action appealing the Commissioner's Decision.  [AR at 6-7.] Plaintiff timely filed her Complaint on October 5, 2009.

---

[1] In discussing the merits of this case, the Court will refer to the ALJ Decision.

[2] It appears that Plaintiff's request is dated October 1, 2009, but the date on her request is partially obscured.  [AR at 8.]

## I.   <u>**Plaintiff's Opening Brief**</u>

In her Opening Brief,[3] Plaintiff argues that
approximately thirty documents contained in the Administrative
Record's exhibits are not her records and those records pertain
to other persons.  She contends that "those documents were used
to determine [her] denials by the doctors that helped to
determine [her] disability."  [Opening Brief at 1.]  For example,
the agency doctors talked about Plaintiff's drug dependency, but
Plaintiff denies having a drug abuse problem.  According to
Plaintiff, there was only one reference to marijuana use in her
files.  A visiting doctor at Adult Mental Health asked her if she
had ever smoked marijuana to ease the pain of losing her partner,
and Plaintiff told him that she had tried it.  Plaintiff states
that, when she discovered that there was an issue of drug abuse
in her case, she submitted a retraction letter from Adult Mental
Health.  [<u>Id.</u> at 1-2.]

Plaintiff states that, during the period from 1994 to
2007, her partner of seventeen years died after an extended
battle with colon cancer.  Their daughter was distraught and
tried to commit suicide fourteen times within a year after his
death.  The stress of that situation was more than Plaintiff

---

[3] Plaintiff's document is titled "Findings of fact and
conclusions of law".  Chief United States District Judge Susan
Oki Mollway construed it as Plaintiff's Opening Brief.  [Letter
to Pltf. from Chief Judge Mollway, filed 1/27/11 (dkt. no. 25).]

could bear.  According to Plaintiff, her daughter was also involved in a car accident that resulted in brain damage and various physical injuries.  The brain damage led to serious psychological problems, requiring a two-week hospitalization in a children's mental hospital.  Also during this thirteen-year period, Plaintiff had surgery to remove three lumps in her left breast, and she had an emergency gall bladder removal.  [Id. at 2-3.]  The stress and anxiety that Plaintiff experienced compromised her immune system, resulting in "ongoing infections, skin allergies, [and] asthma."  [Id. at 3.]  In addition, she "suffered neck and lower skull trauma" from two car accidents during this period.  [Id.]  After the last accident, Plaintiff required eighteen staples in her skull, and she began suffering from memory problems, headaches, and difficulty moving her neck and right shoulder.  [Id.]

Plaintiff contends that the ALJ Decision failed to address: her hip replacement in 2000; her degenerative bone disease; the dislocated knees that she has had since age twelve; her carpal tunnel syndrome; her memory loss, which also triggers anxiety attacks; and her compromised immune system, which has caused pneumonia, asthma, high blood pressure, and respiratory problems.  [Id.]  Plaintiff also contests the ALJ's finding that she could perform other work because she lives one hundred miles from the nearest town that may have employment.  Further,

according to Plaintiff, most of the businesses with jobs like the
ones identified by the vocational expert - flower picker and
fruit sorter - are family businesses that hire from within their
family.  Finally, she argues that her carpal tunnel syndrome
would make these jobs very painful for her.  [Id. at 3-4.]

## II.  The Commissioner's Answering Brief

The Commissioner argues that this Court should affirm
the Decision in its entirety because it is supported by
substantial evidence and there are no legal errors.  [Answering
Brief at 1.]  The Commissioner also notes that, from December
2003 to February 2007, Plaintiff did bookkeeping work for a
friend, applied for work, tried to go into business with a
partner, did heavy yard work, and traveled to Las Vegas to visit
her daughter.  [Id. at 2-3 (citing AR 231-33, 200, 222, 227).]
On July 28, 2005, Plaintiff underwent a consultive mental status
examination by Robert Chamberlain, Psy.D.  Dr. Chamberlain noted,
inter alia, that although Plaintiff was somewhat anxious, she was
not in acute distress, was well oriented, had above average
intelligence, and had no problems with insight, judgment, and
reasoning.  Dr. Chamberlain opined that Plaintiff would be able
attend a job, remember simple instructions, and perform low
stress work satisfactorily if there was minimal contact with
others.  [Id. at 3-4 (citing AR at 253-55).]  Dr. Chamberlain
examined Plaintiff again in March 2006 in light of her complaints

of ongoing depression and anxiety.  At that time, Plaintiff
appeared disheveled and somewhat irritable and anxious.  Her test
result showed only average intelligence, but Dr. Chamberlain
noted that Plaintiff forgot her glasses and this may have
resulted in a lower score.  His ultimate opinion about
Plaintiff's employability remained unchanged, except that he
noted that may have some difficulty with low stress work.  [<u>Id.</u>
at 5-6 (citing AR at 360-63).]  Also in March 2006, a State
agency psychologist, David Lam, Ph.D., reviewed Plaintiff's
record and opined that Plaintiff had the functional capacity to
do simple, repetitive tasks.  He also opined that the treatment
records did not support the opinion of Plaintiff's mental health
provider, John Hibscher, Ph.D., that Plaintiff had difficulty
with simple work instructions, would not be able to attend a job
regularly, could not get along with others, and could not cope
with a low-demand job.  [<u>Id.</u> (citing AR at 340).]

In response to Plaintiff's claim that the
Administrative Record contains exhibits that pertain to other
persons, the Commissioner notes that the ALJ removed pages from
the record that Plaintiff's representative argued did not belong
to Plaintiff.  [<u>Id.</u> at 9-10.]  Plaintiff objected to numerous
pages in Exhibit 9F and to pages 11-12 and 19-20 in Exhibit 8F.
The ALJ ultimately stated that he would remove both exhibits in
their entirety.  [AR 490-91 (hearing transcript).]  The

8

Commissioner argues that there is no evidence that the documents which the ALJ considered belonged to anyone other than Plaintiff. [Answering Brief at 10.]

The Commissioner also argues that there was no reversible error in the ALJ's recognition of Plaintiff's prior marijuana use. Plaintiff admits that she tried marijuana in the past, but she asserts that she does not currently have a drug problem. The Commissioner argues that this is consistent with the ALJ's findings and the evidence in Plaintiff's medical records. The Commissioner also emphasizes that drug use was not at issue in Plaintiff's case; the ALJ did not deny Plaintiff's application based on drug use, nor did he base his adverse credibility determination on drug use. [Id. at 10-11.]

The Commissioner contends that there is substantial evidence in the record to support the ALJ's finding that Plaintiff retained the residual functional capacity ("RFC") to perform simple, repetitive tasks. The Commissioner argues that, although Plaintiff complained of mobility problems, there was no medical documentation substantiating the extent of her claimed limitations. [Id. at 12-13.] Moreover, the Commissioner notes that Plaintiff was not under medical care for her physical ailments and no doctor assessed any limitations to her physical functions. Plaintiff has not identified any evidence suggesting that the ALJ's findings were inaccurate. [Id. at 13.]

As to Plaintiff's mental health condition, the
Commissioner argues that Plaintiff only received conservative
treatment and therapy and that her daily activities indicated
that she was functional in spite of her condition.  Further,
several doctors opined that Plaintiff would be able to perform at
least simple, repetitive tasks.  [Id. at 14-15.]  The
Commissioner apparently acknowledges that Plaintiff's testimony
cast doubt upon whether she was able to keep up with her daily
activities, but the Commissioner argues that the ALJ's
interpretation of the evidence was reasonable and supported by
substantial evidence.  Plaintiff's disagreement with the ALJ's
findings and the presence of some contrary evidence in the record
is not sufficient to warrant reversal.  [Id. at 16.]

Finally, the Commissioner emphasizes that the
applicable test in the final step of the five-factor analysis is
whether an applicant can perform jobs that exist in significant
numbers in the national economy; it is irrelevant whether there
is a significant number of those jobs in the local economy.  [Id.
at 16-17.]  Even if the local job market was relevant, Plaintiff
has not provided any evidence in support of her contention that
the jobs which the ALJ referred to do not exist in the local
economy.  She also failed to support her claim that she cannot
perform the identified jobs because of her physical limitations.
There was no medical evidence suggesting that Plaintiff had

difficulty using her hands or wrists, and therefore the ALJ was
not required to incorporate extremity limitations in determining
Plaintiff's RFC.  [<u>Id.</u> at 18-19.]

In conclusion, the Commissioner urges the Court to
affirm the Decision because it is supported by substantial
evidence and is correct as a matter of law.

## **STANDARD**

Under the Social Security Act, an applicant may appeal
the Commissioner's final decision to a federal district court.
42 U.S.C. § 405(g).  The district court reviews the decision of
the Commissioner to determine whether the decision is supported
by substantial evidence or is based on an error of law.  <u>Bruce v.
Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (citation omitted).

> Substantial evidence is such relevant evidence as
> a reasonable mind might accept as adequate to
> support a conclusion.  The evidence must be more
> than a mere scintilla but not necessarily a
> preponderance.  The ALJ's findings will be upheld
> if supported by inferences reasonably drawn from
> the record. . . .  The court will uphold the ALJ's
> conclusion when the evidence is susceptible to
> more than one rational interpretation.  Finally,
> the court will not reverse an ALJ's decision for
> harmless error, which exists when it is clear from
> the record that the ALJ's error was
> inconsequential to the ultimate nondisability
> determination.

<u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008)
(citations and quotation marks omitted) (alteration in original).
In determining whether the decision is supported by substantial
evidence, the court must consider the administrative record as a

whole and, where the evidence can reasonably support either affirmance or reversal, the district court may not substitute its judgment for the ALJ's.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) (citations omitted).

**DISCUSSION**

**I.  Eligibility for Disability Benefits**

In order to establish that she is eligible for social security disability benefits, a claimant has to demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  The ALJ evaluates the claimant's request for disability benefits based on a five-step analysis.  20 C.F.R. § 404.1520; see also Parra, 481 F.3d at 746.

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity".  20 C.F.R. §§ 404.1520(a)(4)(i) & (b), 404.1574 (guidelines for "substantial gainful activity" for employees), 404.1575 (guidelines for "substantial gainful activity" in self-employment).  If the claimant is engaged in substantial gainful activity, she is not disabled.  § 404.1520(a)(4)(i).

Second, the ALJ considers whether the claimant has a

medically severe impairment or combination of impairments and whether the impairment meets the duration requirement.[4] If the claimant does not have a medically severe impairment, or combination of impairments, that meets the duration requirement, she is not disabled. § 404.1520(a)(4)(ii). The medically severe impairment or impairments must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities[.]" § 404.1520(c).

The third factor also considers the severity of the claimant's impairment or combination of impairments. If the claimant's impairment, or combination of impairments, meets or equals one of the impairments listed in Appendix 1 to Subpart P, Regulation 4, and satisfies the duration requirement, she is disabled. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant is still able to perform her "past relevant work"[5] in light of her "residual functional capacity",[6] she is not disabled. § 404.1520(a)(4)(iv), (f).

---

[4] "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 404.1509.

[5] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1) (citing 20 C.F.R. § 404.1565(a)).

[6] A claimant's "residual functional capacity", or RFC, is the most she can do in light of the limitations caused by her
(continued...)

At the final step, the ALJ considers the claimant's
RFC, as well as her age, education, and work experience.  If, in
light of these considerations, the claimant can adjust to other
work, she is not disabled.  If she cannot make the adjustment,
she is disabled.  § 404.1520(a)(4)(v).  The other work the
claimant can perform "must exist in significant numbers in the
national economy (either in the region where [she] live[s] or in
several regions in the country)."  20 C.F.R. § 404.1560(c)(1).

> The claimant bears the burden of proving steps one
> through four, consistent with the general rule
> that [a]t all times, the burden is on the claimant
> to establish [her] entitlement to disability
> insurance benefits.  Once this prima facie case is
> established, the burden shifts to the Commissioner
> at the fifth step to show that the claimant may
> perform other gainful activity.

Parra, 481 F.3d at 746 (citations and internal quotation marks
omitted) (alterations in original).

## II.  **Alleged Errors in the ALJ Decision**

Plaintiff appears to argue that the ALJ erred in:
1) considering medical records that did not belong to her;
2) failing to consider all of her physical and mental health
impairments; 3) finding that she could perform jobs that she is

---

        [6](...continued)
impairment or impairments and the associated symptoms, including
pain.  20 C.F.R. § 404.1545(a)(1).  In determining the claimant's
RFC, the ALJ considers the claimant's "ability to meet the
physical, mental, sensory, and other requirements of work[.]"  §
404.1545(a)(4).  The ALJ determines a claimant's RFC based on all
the relevant evidence in the record.  See §§ 404.1520(a)(3),
404.1545(a)(3).

unable to perform because of her physical limitations; and

4) considering jobs that are not available in Plaintiff's

community.

## A.   Erroneous Medical Records

First, Plaintiff states that her representative at the

hearing noticed upon reading Plaintiff's file that "many of the

exhibits ( aound (sic) 30 documents) were of people that were not

[Plaintiff]."  [Opening Brief at 1.]  Plaintiff believes that

"those documents were used to determine [her] denials by **the**

**doctors** that helped to determine [her] disability."  [Id.

(emphasis added).]  Plaintiff, however, does not identify which

documents are not her medical records, nor does she identify the

agency doctor, or doctors, who allegedly considered medical

records that did not belong to Plaintiff.

During the hearing before the ALJ, Plaintiff objected

to pages 3-13, 31-39, and 40-42 in Exhibit 9F and to pages 11-12

and 19-20 in Exhibit 8F.  The ALJ stated that he would exclude

both exhibits in their entirety.  [AR 490-91 (hearing

transcript).]  The ALJ, however, apparently admitted Exhibit 8F

and 9F in part.  He admitted Exhibit 8F pages 1-16, [AR at

273-88,] and Exhibit 9F pages 1-19 [AR at 289-307].  It is not

clear whether the ALJ excluded the pages that Plaintiff objected

to and renumbered the exhibits or whether some of the pages that

Plaintiff objected to remain in the record.  The Court, however,

notes that each page of Exhibit 8F, with the exception of page 3, and each page of Exhibit 9F, with the exception of page 5, bears Plaintiff's name. Exhibit 8F, page 3, and Exhibit 9F, page 5 appear to be continuations of Exhibit 8F, page 2, and Exhibit 9F page 4, respectively, and both of those pages bear Plaintiff's name. [AR at 274-75, 292-93.] Thus, there is no evidence in the Administrative Record that the ALJ considered medical records that belonged to another person.

Plaintiff appears to claim that some of the agency doctors who rendered medical opinions adverse to her case considered medical records belonging to another person. She asserts that some of the records the agency doctors considered related to men, and she argues that the agency doctors erroneously referred to her as being drug dependent. [Opening Brief at 1.] There is nothing in Exhibits 8F and 9F which indicates that the records belong to a male patient. As to her alleged drug dependency, Plaintiff states:

> There was only one time of (sic) my entire 7 year history of doctor's reports that marijuana was mentioned in my files. . . . Dr. Hibscher, my phycologist (sic), any of the ongoing phychiatrist (sic) from Adult Mental Health, or my personal physician, Dr. Lora Aller, during that period of time have made no mention of drug abuse.

[Id. at 2.]

The ALJ found that Plaintiff had a "history of substance abuse in remission." [AR at 19 (citations omitted).]

Although Plaintiff asserts that her doctors never mentioned drug abuse, Dr. Hibscher did note in 2003 that he was concerned that Plaintiff "may be back on drugs." [AR 199.] He also noted on December 8, 2004 that Plaintiff said she "might go back to smoking marijuana[.]" [AR at 236.] Rodger Kollmorgan, M.D., who Plaintiff saw for counseling at West Hawaii Mental Health Center, [AR at 84,] noted Plaintiff's cannabis abuse and her goal of sobriety in his first clinical note, dated January 2004. [AR at 313.] Thus, there is substantial evidence in the record that Plaintiff had at least a prior history of drug use. The fact that the ALJ and the agency doctors referred to Plaintiff's prior drug abuse does not prove that they erroneously considered medical records belonging to another person.

Further, even assuming *arguendo* that the ALJ and the agency doctors considered a history of drug use based on medical records belonging to another person, the error does not require reversal because it was inconsequential to the ultimate disability determination. See Tommasetti, 533 F.3d at 1038. The ALJ did not base either his adverse credibility determination or his determination of Plaintiff's RFC on her prior drug use. Plaintiff's appeal is therefore DENIED as to her claim that the ALJ and the agency doctors erred in considering the medical records of another person.

**B.   Five Step-Analysis**

The Court now turns to the remainder of Plaintiff's arguments, which relate to the ALJ's five-step analysis.

**1.   Step One**

The ALJ found that Plaintiff has not been engaged in substantial gainful activity since her alleged onset date.  [AR at 19 (citations omitted).]  Neither party contests this finding.

**2.   Steps Two & Three**

The ALJ found that Plaintiff "has the following severe combination of impairments: a depressive disorder, an anxiety disorder and a history of substance abuse in remission."  [AR at 19 (citations omitted).]  The ALJ also found that Plaintiff's combination of impairments did not meet or equal any listed impairments.  [Id. (citations omitted).]  Neither party contests the equivalency finding and there is no dispute that Plaintiff suffers from depression and anxiety and that the combination of Plaintiff's impairments is severe.  The Court, however, recognizes that Plaintiff denies prior substance abuse and she contends that she has other impairments that the ALJ failed to consider.

**3.   Step Four**

The ALJ found that Plaintiff had the RFC "to meet the exertional and nonexertional demands of work except that she is limited to simple repetitive tasks.  She may be better suited for

tasks involving minimal contact with others but this would not be a significant restriction in her ability to function." [AR at 19.] In so finding, the ALJ applied a two-step analysis: 1) "whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms[;]" [id.;] and 2), if the claimant satisfies the first factor, the ALJ evaluates "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities" [AR at 20]. The ALJ recognized that objective medical evidence does not always convey the severity of an impairment, and he noted that he is required to make a credibility finding based on the entire record if the claimant's statements about the intensity, persistence, or limiting effects of her pain and symptoms are not substantiated by objective medical evidence. [Id.] In making that credibility finding, the ALJ noted that he must consider the following factors in addition to the objective medical evidence:

> 1. The claimant's daily activities;
> 2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or

has taken to alleviate pain or other symptoms;
5.    Treatment, other than medication, the
claimant receives or has received for relief of
pain or other symptoms;
6.    Any measures other than treatment the
claimant uses or has used to relieve pain or other
symptoms (e.g., lying flat on his or her back,
standing for 15 to 20 minutes every hour, or
sleeping on a board); and
7.    Any other factors concerning the claimant's
functional limitations and restrictions due to
pain or other symptoms.

[Id. (citing 20 CFR 404.1529(c) and 416.929(c) (some citations

omitted)).]

       The ALJ summarized Plaintiff's condition and claimed

impairments as follows:

       [Plaintiff] has described an inability to work due
       to feelings of depression and anxiety, as well as
       asthma, high blood pressure, hip problems, chipped
       left knee cap and injuries sustained in a motor
       vehicle accident.  She testified that she has pain
       radiating from her back down to her legs, that she
       cannot walk, sit or stand for very long, and that
       she cannot lift and/or carry more than about 16-20
       pounds, cannot reach overhead and cannot grasp
       things without dropping them.  She also stated
       that she has difficulty with postural movements,
       and that she uses a cane to help her get around.
       She further described having problems completing
       tasks, following instructions, remembering and
       concentrating.  She reports that she cannot handle
       stress, and has anxiety attacks and prefers to
       isolate herself from others.  She testified that
       she has dreams that cause her awaken (sic), in
       sweats, about two to three times a night, and that
       her medication makes her feel drowsy.

[Id. (citing Exhs. 2E, 3E, 7E, 14E).]

       The ALJ then reviewed Plaintiff's medical records.  In

pertinent part, the ALJ noted that Plaintiff's physician,

Lora Aller, M.D., only treated Plaintiff for "transient physical ailments such as rashes, shingles and colds." [AR at 21 (citing Exhs. 1F, 3F).] Plaintiff's psychologist, John Hibscher, Ph.D., noted that, from December 2003 to November 2004, Plaintiff reported traveling to the mainland to visit her daughter, seeking employment, and eventually taking a part-time job doing bookkeeping for a friend in October 2004. In January 2005, Plaintiff reported to Dr. Hibscher that she was pleased with her adjustment to her job. [Id. (citing Exh. 2F).]

Plaintiff underwent a consultive evaluation by Robert C. Chamberlain, Psy.D., in July 2005. He opined that her functioning was adequate with respect to her activities of daily living, concentration, and social function. [AR at 21-22.] Although Plaintiff complained of a concussion and poor memory because of a recent car accident, Dr. Chamberlain found her to be "outgoing" and "friendly" and "alert and cooperative". [AR at 22.] He confirmed that Plaintiff had some difficulty with memory, but he opined that she did not have any problems with insight, judgment, or reasoning. He therefore concluded that Plaintiff could carry out a simple work routine with minimal limitations. [Id. (citing Exh. 5F).] The ALJ noted that Dr. Kollmorgan made the same conclusion in his December 2005 report. [Id. (citing Exh. 10F).]

Only a few weeks later, Dr. Hibscher reported that

Plaintiff showed reduced concentration and memory and that she needed assistance with her activities of daily living. He diagnosed her with major depression, recurrent. [Id. (citing Exh. 11F).] The ALJ, however, noted that Dr. Chamberlain evaluated Plaintiff again in March 2006 and, although he recognized that Plaintiff had regressed in some respects, he found that her cognitive function remained in tact. [AR at 22-23.] Dr. Chamberlain again concluded that Plaintiff could carry out a simple work routine and could get along with others with minimal contact. [AR at 23 (citing Exh. 16F).]

In a report dated August 31, 2006, Dr. Kollmorgan opined that Plaintiff could not work because of her depression, anxiety, and a possible attention deficit disorder. [AR at 466.] The ALJ noted that the August 31, 2006 report did not refer to any clinical findings supporting his opinion, and that Dr. Kollmorgan's progress notes suggest he had not treated Plaintiff since December 2005. [AR at 23.] The ALJ also noted that Plaintiff saw Dr. Hibscher from 2006 through approximately February 2007 and, during that time, Plaintiff functioned well enough to travel to the mainland to help care for her grandchildren and to try to resume working, even though she did not always take her anti-depressant medication. In addition, she remained active in her appeal of the denial of her social security benefits. [Id. (citing Exh. 18F).]

22

Based on Plaintiff's medical records, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Id.]

It is well settled that "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). The Ninth Circuit has also stated that:

> The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.

Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citations and internal quotation marks omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff reported. [AR at 23.] The ALJ did not make a finding or cite any evidence that Plaintiff was malingering. The ALJ was

23

therefore required to support his adverse credibility determination with specific, clear and convincing reasons. <u>See Vasquez</u>, 572 F.3d at 591. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (citation and block quote format omitted).

In the present case, the ALJ did give specific reasons, based on Plaintiff's medical records, her testimony about her daily activities, and other extrinsic evidence about her activities, for his adverse credibility determination. The crux of this case is whether the ALJ's reasons were clear and convincing. The ALJ's reasons consist of five findings relevant to Plaintiff's RFC: 1) "her ability to concentrate and maintain persistence and pace[;]" 2) her "ability to perform simple repetitive tasks[;]" 3) "her ability to interact with others"; 4) the lack of any deterioration in her condition due to mental impairment; and 5) the lack of exertional limitations attributable the effect of Plaintiff's asthma, high blood pressure, car accident injuries, and other conditions. [AR at 23-24.]

The first two findings, Plaintiff's ability to

concentrate and ability to perform simple repetitive tasks, are
related and the Court will address those findings together.  The
ALJ noted that Plaintiff's medical records show that, at her
medical appointments, she was consistently "alert and
well-oriented . . . exhibiting adequate reasoning, judgment or
insight[,]" and, for the most part, she was "adequately groomed
and dressed[.]"  [AR at 23.]  Plaintiff's daughter, however,
stated that Plaintiff's appearance and hygiene were "sometimes
poor."  [Id.]  Plaintiff's test scores show average intelligence
and no difficulty reading, but "moderate difficulty with recall
and concentration[.]"  [Id.]  The ALJ pointed out that, on a
daily basis, Plaintiff cared for her pets, worked on puzzles, and
prepared simple meals for herself.  Plaintiff is also able to
drive.  The ALJ therefore found that Plaintiff retained the
ability to perform simple repetitive tasks and that her
concentration, persistence and pace were only moderately
restricted.  [Id.]

        The Court finds that these reasons are not clear and
convincing.  The fact that Plaintiff attends periodic medical
appointments, which presumably only take up a relatively small
portion of her day, and that she appears well-oriented and
adequately groomed during those appointments is not clear and
convincing evidence that she would be able to maintain regular
attendance and attention at a job.  Similarly, activities

performed periodically throughout the day, like caring for pets,
working on puzzles, and preparing simple meals - primarily frozen
dinners, Slim Fast, and saimin, [AR at 24 (ALJ Decision), 115
(Function Report by Plaintiff, dated 1/7/06),] - and driving
occasionally are not clear and convincing evidence that Plaintiff
has the physical capacity to perform simple and repetitive tasks
for a job consistently throughout a work day.  See 20 C.F.R. §
404.1545(a)(4) (noting that, in determining the claimant's
residual functional capacity, the ALJ considers the claimant's
"ability to meet the physical, mental, sensory, and other
requirements of work").

   Third, the ALJ found that Plaintiff only has minimal
restrictions in her ability to interact with others and that she
could get along with people at work, particularly if the job
required minimal contact with others.  In support, the ALJ noted
that Plaintiff communicates appropriately with her doctors during
her appointments, goes shopping, and "remains in contact with her
daughter, whom she has visited."  [AR at 23.]  The ALJ found that
Plaintiff goes shopping about twice a week.  [AR at 24.]  Again,
interacting with doctors or shopping on a periodic basis is not
clear and convincing evidence that Plaintiff has the capacity to
interact with co-workers and supervisors on a regular basis in a
work environment.  Plaintiff's contact with her daughter also
does not support the ALJ's finding that Plaintiff is capable of

adequate personal interaction in a work environment.

Plaintiff's daughter, who was living on the mainland at the beginning of Plaintiff's benefits application process but apparently moved back to Hawai`i, stated that she visits or calls Plaintiff to check if Plaintiff needs anything, to seek if Plaintiff has fed and given water to Plaintiff's cats, and to remind Plaintiff to do things like take a shower, clean the house, and take her medicine. Further, although Plaintiff maintains contact with her daughter, Plaintiff no longer spends time with her grandchildren, and Plaintiff has severed ties with her other family members and friends. In fact, although Plaintiff previously loved spending time with her grandchildren, she no longer has the desire to do so. [AR at 123-31 (Function Report Adult - Third Party, dated 1/9/06 by Jessica Alip).]

Fourth, the ALJ found that Plaintiff had "no episodes of deterioration due to any mental impairment." [AR at 24.] In support of this finding, the ALJ stated only that Plaintiff "has been treated conservatively with medications and therapy, and has not required any inpatient mental care." [Id.] The ALJ improperly rejected Plaintiff's subjective testimony about the severity of her mental impairments based solely upon a lack of medical evidence corroborating the full extent of Plaintiff's claimed impairments. See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

27

Fifth, the ALJ rejected Plaintiff's claim that she was not able to work due to asthma, high blood pressure, and her car accident injuries. He also rejected her complaints of difficulty with mobility and with grasping objects. In doing so, the ALJ noted Plaintiff's success in controlling her asthma and high blood pressure with medication, and the lack of evidence of "any frequent exacerbations." [AR at 24.] The ALJ noted Plaintiff's prior joint replacement, "occasional" complaints of headache and back pain, and injuries in the car accident. The ALJ, however, pointed out that the medical evidence about these ailments did not reflect any ongoing impairment. [Id.] If this is all of the evidence that the ALJ considered in rejecting Plaintiff's subjective pain testimony, his finding is erroneous. See Burch, 400 F.3d at 680.

The ALJ, however, also discussed what he called Plaintiff's "wide range of daily activity" and noted that Plaintiff was able to live an independent life with few limitations. [AR at 24.] As discussed above, Plaintiff's activities around her home are not clear and convincing evidence that she has the capacity to meet the physical requirements of a job. For example, the ALJ pointed out that Plaintiff's activities include preparing her own meals and washing dishes. Plaintiff, however, testified that she washes her dishes once a week and that her meals usually consist of Slim Fast because it's

"the least difficult thing to do." [AR at 505-06.] When she does wash the dishes, the task takes "a couple of hours" because Plaintiff has to either sit down and wash them or lean on the counter. [AR at 506.] Such activities do not indicate that Plaintiff has the physical capacity to function in a work environment. Thus, even if the ALJ considered Plaintiff's daily activities in rejecting her subjective testimony about the extent of her pain from her physical conditions, his findings do not constitute clear and convincing evidence that would warrant his adverse credibility finding.

Having considered the ALJ's five findings supporting his adverse credibility determination, individually and collectively, this Court FINDS that the ALJ's adverse credibility determination is not supported by substantial evidence in the record. The Court also FINDS that, insofar as the ALJ determined Plaintiff's RFC in light of his adverse credibility determination, the ALJ's finding that Plaintiff has the RFC to perform simple repetitive tasks is not supported by substantial evidence in the record.

## 4. **Step Five**

The ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, there are jobs which exist in significant numbers in the national economy that Plaintiff can perform, and therefore Plaintiff was not disabled for purposes of

the Social Security Act through the date of the ALJ Decision.
[AR at 26.]  Insofar as the ALJ's RFC finding was erroneous, his
finding that there are jobs in the national economy which
Plaintiff can perform is also erroneous.  The Court therefore
REVERSES the ALJ's ultimate finding that Plaintiff was not
disabled through the date of the ALJ Decision.

        In light of this Court's ruling, the Court need not
address Plaintiff's remaining arguments - that she is not
physically able to perform the jobs which the ALJ identified and
that the ALJ should only have considered jobs that were available
in Plaintiff's community.  Plaintiff's appeal is therefore DENIED
AS MOOT as to these issues.

**III.  <u>Scope of Remand</u>**

        The Court now turns to the scope of the remand
proceedings.  The Court has "discretion to remand a case either
for additional evidence and findings or to award benefits."  <u>See</u>
<u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996) (citation
omitted).

                Remand for further administrative proceedings
        is appropriate if enhancement of the record would
        be useful.  Conversely, where the record has been
        developed fully and further administrative
        proceedings would serve no useful purpose, the
        district court should remand for an immediate
        award of benefits.  More specifically, the
        district court should credit evidence that was
        rejected during the administrative process and
        remand for an immediate award of benefits if (1)
        the ALJ failed to provide legally sufficient
        reasons for rejecting the evidence; (2) there are

30

> no outstanding issues that must be resolved before
> a determination of disability can be made; and (3)
> it is clear from the record that the ALJ would be
> required to find the claimant disabled were such
> evidence credited.

Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138

(9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593

(9th Cir. 2004)).

The present case meets the first requirement – the ALJ

failed to provide a legally sufficient basis for his adverse

credibility determination, and therefore he also failed to

provide a legally sufficient basis for his RFC finding.

This case also meets the third requirement – based on

the existing record excluding the previous adverse credibility

determination, the ALJ would be required to find Plaintiff

disabled if she meets the duration requirement.  The ALJ stated

at the hearing that, based on Plaintiff's testimony, her RFC

would be limited to less than sedentary work.  [AR at 520.]  When

asked about a hypothetical person with Plaintiff's background and

a limitation to less than sedentary work, the vocational expert

testified that the hypothetical person could not be employed.

[AR at 519.]

As noted supra, however, the ALJ must consider the

duration requirement before making a final determination of

disability.  Although it is clear that, as of the date of the ALJ

Decision – May 25, 2007, Plaintiff was unable to engage in any

substantial gainful activity by reason of her medically determinable physical and mental impairments, it is not clear whether her impairments had lasted or could be expected to last "for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Court notes that "[r]emand is appropriate where additional administrative proceedings could remedy defects[.]" Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989) (internal quotation marks omitted). The Court emphasizes that the only area where the record is defective, and where remand is appropriate, is the duration requirement.

At the administrative hearing, Plaintiff testified that she could only sit comfortably for approximately thirty to forty-five minutes at a time because of her prior hip replacement surgery. She also testified that her condition was getting worse because a hip replacement typically lasts for ten years and, at the time of the hearing, her hip replacement was seven years old and, as a result, her back nerve pain was starting to return. Further, because of her degenerative bone disease, it is difficult for Plaintiff to stay in any position for an extended period of time. [AR at 492-93.] Plaintiff testified that it is very uncomfortable for her to sit on a backless stool because a backless stool does not provide sufficient support. Plaintiff stated that she can only stand comfortably for fifteen to twenty minutes at a time, and she cannot stand and use her hands to

manipulate objects for long periods of time because she has to use one arm to maintain her balance. [AR at 493-94.] Plaintiff testified that she cannot stoop, crouch, crawl, or do overhead work. [AR at 497-99.] She can grasp small objects, but she described herself as "dropsy". [AR at 501.] She cannot kneel because of the bad knees that she had since age eleven, cannot climb, and has difficulty with stairs. [AR at 502-04.] According to Plaintiff, she has experienced these limitations since 2002. [AR at 492-95, 497-99, 501-04.]

Plaintiff testified that she has difficulty concentrating and has poor short-term memory; she sometimes forgets things immediately after hearing them, but she can retain some things for about ten minutes. Her attention span had been decreasing for a few years prior to the hearing, and she has difficulty focusing on things, particularly when she knows they are important. She is able to read for thirty minutes at a time, but she sometimes has to read chapters over to know what she is reading. [AR at 499-500.] Plaintiff also stated that she has difficulty following verbal and written instructions and has difficulty completing tasks. She does not handle stress well, and stress compromises her intelligence. [AR at 506-09.] According to Plaintiff, she has experienced these limitations since 2002. [AR at 499-502, 506-09.] Thus, Plaintiff's testimony arguably supports her claim that her impairments lasted

from her alleged onset date – June 30, 2002, and she therefore would meet the duration requirement.

Even Plaintiff's treating doctors, however, opined at different points prior to the ALJ Decision that Plaintiff was able to work. In his report after Plaintiff's December 12, 2005 visit, Dr. Kollmorgan opined that, in the context of full-time, competitive work, Plaintiff had the RFC, in light of psychological/psychiatric considerations alone, to: understand and remember simple instructions; attend a job regularly and persist at work tasks with ordinary supervision; get along with supervisors and co-workers during minimal contact; and adapt to a low-demand, entry-level job. [AR at 310-11.] Plaintiff herself reported to Dr. Hibscher at various points during 2004 and 2005 that she was working part-time or looking for work. [AR at 21 (citing Exh. 2F).] Thus, there is some evidence suggesting that Plaintiff's impairments did not prevent her from engaging in any substantial gainful activity until some time after her alleged onset date.

The Ninth Circuit has noted that:

> As a general matter, [Social Security Regulation ("SSR")] 83-20 sets forth guidelines for determining the onset date of disability. It directs that the judgment regarding the onset date of disability "must have a legitimate medical basis" and that the ALJ "should call on the services of a medical advisor when onset must be inferred." SSR 83-20. We have explained this ruling to mean that [i]n the event that the medical evidence is not definite concerning the

34

onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.

. . . The onset date of disability is defined in the ruling as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20.

<u>Sam v. Astrue</u>, 550 F.3d 808, 810 (9th Cir. 2008) (some citations and quotation marks omitted) (some alterations in original).

In the present case, the duration of Plaintiff's alleged disability is not clear from the record. Further proceedings to determine whether Plaintiff meets the duration requirement are necessary. The Court, in the exercise of its discretion, limits the scope of the additional evidence that the ALJ may accept on remand to the duration requirement. This Court therefore REMANDS the case for further proceedings consistent with this order and with SSR 83-20.

## **CONCLUSION**

On the basis of the foregoing, the Commissioner's July 30, 2009 Decision denying Plaintiff social security disability insurance benefits and supplemental security income, is HEREBY REVERSED. The Court FINDS that, on remand, the ALJ must find that, as of the date of the ALJ Decision, Plaintiff was unable to engage in any substantial gainful activity by reason of her medically determinable physical and mental impairments. Further, the Court REMANDS the instant case to the Social

35

Security Administration for further proceedings on the following: 1) determination of whether Plaintiff meets the duration requirement; and 2) if Plaintiff meets the duration requirement, calculation of benefits.

Plaintiff's appeal is HEREBY DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 26, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**STELLA GOODWIN V. COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION; CIVIL NO. 09-00469 LEK-BMK; AMENDED ORDER REVERSING THE COMMISSIONER OF SOCIAL SECURITY'S DECISION TO DENY PLAINTIFF SOCIAL SECURITY DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME**